```
UNITED STATES DISTRICT COURT
 MIDDLE DISTRICT OF FLORIDA
       TAMPA DIVISION
```

UNITED STATES OF AMERICA

v.                                Case No. 8:24-cr-234-VMC-TGW

CHRISTOPHER SWITLYK
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Christopher Switlyk's Motion to Dismiss Based on Prosecutorial Misconduct (Doc. # 44), filed on January 14, 2025. The United States of America responded in opposition on January 28, 2025. (Doc. # 53). For the reasons that follow, the Motion is denied.

**I. Background**

Over a decade ago, in 2013, Switlyk was convicted and sentenced in this Court for conspiracy to distribute controlled substances and money laundering. See United States v. Switlyk et al, Case No. 8:10-cr-530-VMC-AEP (M.D. Fla. 2010). As part of his sentence, a forfeiture money judgment for $10,700,592 was entered against Switlyk. Id. at (Doc. # 248).

Years passed. After Switlyk was released from prison, he purchased multiple properties for which he was the titled

1

owner: (1) 2410 Victoria Gardens Lane, Tampa, Florida 33609; (2) 516 Shady Place, Daytona Beach, Florida 32114; and (3) 118 Aleatha Drive, Daytona Beach, Florida 32114. He also purchased a 2022 Tesla Model X, which was registered in his name.

Then, on November 13, 2022, the United States filed in the 2010 criminal case an ex parte motion for preliminary order of forfeiture for substitute assets (Doc. # 500), which the Court granted. (Doc. # 501). In addition to forfeiting the three properties and the Tesla, the preliminary order also forfeited the contents of numerous bank and investment accounts owned by Switlyk, among other things. (Id.). The Court entered an amended preliminary order a few days later on November 21, 2022, which still included the three properties and the Tesla. (Doc. # 505).

On November 14, 2022, the U.S. Marshals served the original preliminary order of forfeiture on Switlyk's financial institutions. By November 15, 2022, Switlyk realized that some of his accounts had been frozen. (Doc. # 44 at 3). That day, Switlyk contacted the U.S. Marshals because he saw a zero balance in one of his accounts with the description "Legal Order-United States Marsha 480 724-2000." (Id.; Doc. # 53 at 3). On the morning of November 16, 2022,

2

an investigator with the U.S. Marshals informed Switlyk over the telephone that he would soon receive legal paperwork via email. (Doc. # 44 at 4; Doc. # 53 at 3). Switlyk received a copy of the original preliminary order of forfeiture during the afternoon of November 16, 2022. (Doc. # 44 at 5; Doc. # 53 at 3).

Also on November 16, 2022, but before he received the email with the original preliminary order of forfeiture, Switlyk transferred two of the real properties and the Tesla to his father, Dr. Stephen A. Switlyk. (Doc. # 53 at 3-4). The government represents that Switlyk "backdated the paperwork transferring the Tesla to his father to make it appear as if the transfer took place several days earlier." (Id. at 4). On November 17, 2022, after having received the original preliminary order of forfeiture, Switlyk transferred the third real property to Dr. Switlyk. (Id.). According to Switlyk, he transferred the properties to his father because his father had a financial interest in the properties through promissory notes. (Doc. # 44 at 4-5, 7-10). Switlyk maintains that his father insisted on repayment and directed him to transfer the assets to him after learning of Switlyk's frozen accounts. (Id.).

In the 2010 criminal case, on December 21, 2022, Dr. Switlyk filed a notice of claim and ancillary petition (Doc. # 514), seeking to assert a claim of ownership over the three real properties and the Tesla. On February 8, 2023, Dr. Switlyk filed a supplemental notice of claim and ancillary petition. (Doc. # 520).

During the forfeiture proceedings in the old criminal case, the government was represented by James Muench as forfeiture counsel. In an email from February 15, 2023, to Switlyk's and Dr. Switlyk's civil counsel Leslie Sammis, forfeiture counsel wrote in relevant part: "It seems transferring the real properties and the Tesla (from son to father) after learning of our forfeiture efforts would constitute obstruction of justice, in violation of 18 U.S.C. § 1503 and 18 U.S.C. § 2232." (Doc. # 44-8). The email quoted Sections 1503 and 2232 in full and continued: "It strikes me that by (1) executing and recording the quitclaim deeds and (2) transferring title to the Tesla, the Switlyks were both corruptly endeavoring to obstruct, or impede, the due administration of justice and impeding a criminal forfeiture. Before responding to your settlement offer, it would be helpful to know if you agree with my conclusion." (Id.). The email ended with: "Also, I am still waiting to hear back from

4

you regarding our proposed discovery plan. In the meantime, please give me some proposed dates in late March when I can depose each of the Switlyks." (Id.).

Depositions of Switlyk and Dr. Switlyk were subsequently taken in May 2023 in the forfeiture proceedings. (Doc. # 53 at 7; Doc. # 44-2; Doc. # 44-9). A few months later in September 2023, before the scheduled evidentiary hearing could be held on Dr. Switlyk's claim on the properties, the United States, Switlyk, and Dr. Switlyk filed a notice of settlement. (Doc. # 563). Under that settlement agreement, Switlyk and Dr. Switlyk consented to the forfeiture of all the assets listed in the amended preliminary order of forfeiture, and the United States agreed to forgo any further collection efforts against Switlyk as it related to the $10,700,592 order of forfeiture in the 2010 criminal case. (Id.). Soon after, the United States moved for entry of a final order of forfeiture that matched the terms of the settlement agreement. (Doc. # 565). On September 27, 2023, the Court entered the final forfeiture order. (Doc. # 566).

Subsequently, in May 2024, Switlyk was indicted in this new criminal case on four counts of removal of property to prevent seizure in violation of 18 U.S.C. § 2232, relating to the transfer of the three real properties and the Tesla

5

vehicle to Dr. Switlyk. (Doc. # 1). The Court entered its Pretrial Discovery Order and Notice of Trial and Status Conference, which stated in part: "All motions and memoranda concerning matters not covered by this Order must be filed within thirty (30) days after receipt of the government's Rule 16(a) discovery, and responses must be filed within ten (10) days thereafter." (Doc. # 22 at 4). The government served its Rule 16 discovery to Switlyk on August 6, 2024. (Doc. # 53-1).

Now, Switlyk seeks to dismiss this case on the basis of alleged misconduct by forfeiture counsel during the forfeiture proceedings in the 2010 criminal case. (Doc. # 44). He maintains that "forfeiture counsel threatened Dr. Stephen Switlyk . . . with criminal prosecution unless he forfeited his third-party claims in the properties at issue in the Indictment," which has "had a chilling effect on Mr. Switlyk's ability to full[y] and fairly defend himself in this case." (Id. at 2). The United States has responded (Doc. # 53), and the Motion is now ripe for review.

## II.  Legal Standard

"It is well settled that district courts may exercise their discretionary power to dismiss an indictment on grounds of prosecutorial misconduct where a sufficient showing of

6

prejudice has been made." United States v. Accetturo, 858 F.2d 679, 681 (11th Cir. 1988). "[P]rejudice to the defendant is an essential element when a criminal defendant seeks dismissal of an indictment due to prosecutorial misconduct." United States v. O'Keefe, 825 F.2d 314, 318 (11th Cir. 1987). "[D]ismissal of an indictment for prosecutorial misconduct is an extreme sanction which should be infrequently utilized." Accetturo, 858 F.2d at 681 (citation omitted).

## III. Analysis

As an initial matter, the Motion is denied as untimely. Federal Rule of Criminal Procedure 12(c) states in relevant part that the "court may, at the arraignment or as soon afterward as practicable, set a deadline for the parties to make pretrial motions." Fed. R. Crim. P. 12(c)(1). "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(c)(3). Under the Pretrial Discovery Order and Notice of Trial and Status Conference, all pretrial motions were due thirty days "after receipt of the government's Rule 16(a) discovery." (Doc. # 22 at 4). The government provided its discovery to Switlyk on August 6, 2024. (Doc. # 53-1).

7

Thus, the deadline to file pretrial motions, including any motion to dismiss, was September 5, 2024.

But Switlyk did not file this Motion until January 14, 2025 — over four months after the deadline and less than a month before trial. And there is no good cause for this lateness, given that the alleged prosecutorial misconduct underlying the Motion occurred in February 2023. Indeed, Switlyk fails to acknowledge the untimeliness of his Motion and certainly does not raise an argument of good cause for his delay. (Doc. # 44). Switlyk was aware of the grounds for his Motion long before the pretrial motions deadline, but failed to promptly move to dismiss. Accordingly, the Motion is untimely and denied on this basis. See United States v. Avery, 205 F. App'x 819, 824-25 (11th Cir. 2006) ("[T]he district court entered a scheduling order in which the court required that any motion to dismiss the indictment be filed by September 26, 2005. Avery filed his motion to dismiss on November 25, 2005, which was the Friday before his trial began the following Monday. Thus, under the explicit language of Rule 12 and the court's scheduling order, Avery waived his right to move to dismiss the indictment. Nonetheless, Avery argues on appeal that the facts upon which his motion relied could not have been fully discovered until trial. However,

8

given that Avery's motion to dismiss contained three pages of detailed facts regarding the government's conduct in his case, his argument that the necessary facts could not have been discovered prior to trial is meritless. As such, the district court correctly determined that Avery's motion to dismiss was untimely.").

Even considering the merits, the Motion is denied. Switlyk has not shown that the extreme sanction of dismissal — or any other sanction — is warranted. Switlyk does not argue that any misconduct occurred during the grand jury proceedings that resulted in the indictment in this case. No threats were made toward any witness during the grand jury proceedings. Dismissal of the indictment in this case would not be the proper remedy for any alleged misconduct by forfeiture counsel in the forfeiture proceedings. See United States v. Shelley, 405 F.3d 1195, 1208 n.7 (11th Cir. 2005) (Tjoflat, J., concurring) ("[D]ismissing the indictment only makes sense if the prosecutorial misconduct has somehow infected the indictment itself, rather than only the trial. This is why most of our cases on this subject address misconduct in grand jury proceedings."). Like the government, this Court could locate "no case that states that advising a witness of potential criminal liability before a civil

settlement agreement and before depositions occur in a civil matter[] constitutes egregious prosecutorial misconduct in a subsequent criminal action." (Doc. # 53 at 12).

Regardless, forfeiture counsel did not engage in any misconduct during the forfeiture proceedings. Forfeiture counsel did not threaten either Switlyk or Dr. Switlyk with criminal prosecution. While forfeiture counsel expressed an opinion that Switlyk's and Dr. Switlyk's transfers were unlawful, the email does not include a threat to prosecute either man criminally. (Doc. # 44-8). Furthermore, the email was sent to counsel for Switlyk and Dr. Switlyk — not to Dr. Switlyk directly — which undercuts the claim that the email was coercive of Dr. Switlyk. See United States v. Petit Frere, 334 F. App'x 231, 236-37 (11th Cir. 2009) (holding that "the government's e-mail [to the attorney for a potential witness for the defense] did not violate [defendant's] due process rights" because the e-mail was "not impermissibly threatening or coercive," "did no more than briefly and mildly remind [the witness's] attorney of what could happen if his client testified untruthfully," and "was sent to [the witness's] attorney, not [the witness] himself").

The Court is also not persuaded that this case should be dismissed because of Dr. Switlyk's concerns over testifying,

10

as outlined in his recent conclusory affidavit. See (Doc. # 46-1) ("The United States Attorney's Office for the Middle District of Florida directly and clearly threatened to prosecute me for obstruction of justice or other alleged crimes related to my involvement in this matter, including the topics of my proposed trial testimony. Based upon the threat of prosecution, I fear I will be charged with a crime if I testify at [Switlyk's] trial. Therefore, I will refuse to testify and if called to the stand I will invoke my right to remain silent pursuant to the Fifth Amendment of the U.S. Constitution."). Notably, despite the supposed threat contained in forfeiture counsel's email, Dr. Switlyk agreed to sit for a deposition a few months after in the forfeiture proceedings. Dr. Switlyk responded to the deposition questions rather than invoking his Fifth Amendment right, as Dr. Switlyk now claims he would do at trial. (Doc. # 44-2). Since the email was sent by forfeiture counsel in February 2023 and since Dr. Switlyk's deposition in May 2023, no charges have been brought against Dr. Switlyk. There is no reason to think that, should Dr. Switlyk testify truthfully under oath, the government would bring charges against him. Despite his claims in his affidavit about his current state of mind, Dr. Switlyk may very well choose to testify at trial.

11

Regardless of whether Dr. Switlyk ultimately testifies, there is no evidence that forfeiture counsel engaged in misconduct in the previous case that warrants dismissal of the indictment in this case. Thus, even if the Motion were timely, the Court would still deny it.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Christopher Switlyk's Motion to Dismiss Based on Prosecutorial Misconduct (Doc. # 44) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 30th day of January, 2025.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE